**The STATE of Ohio, Appellant,**

**v.**

**BAKER et al., Appellees.**

[Cite as *State v. Baker* (1993), 87 Ohio App.3d 186.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920410, C–920411, C–920412, C–920413, C–920414 and C–920415.

Decided April 14, 1993.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christian J. Schaefer,* Assistant Prosecuting Attorney, for appellant.

*Richard J. Goldberg,* for appellees.

---

*Per Curiam.*

The state appeals from the trial court's order granting the motion of the defendants-appellees to suppress evidence seized pursuant to the execution of a search warrant at a private club where gambling was conducted. At the hearing on the motion to suppress, the defendants-appellees did not challenge the search warrant, but attacked the constitutionality of: (1) Deputy Brown's initial warrantless entry into the club; and (2) Deputy Swisshelm's execution of the search warrant under the knock-and-enter statute. Regarding Deputy Brown's warrantless entry, the trial court specifically reduced the motion to suppress to a single issue: Did the state sustain its burden of proving that the warrantless entry into the private club was with consent? The state's assignment of error on the first issue is well taken.

The Hamilton County Sheriff received information that several persons had been losing large sums of money gambling at VFW Post 3744. On October 30, 1991, at 6:40 p.m., Deputy Tom Brown, working undercover and accompanied by an unidentified club member, entered the one-story building. They gained admission by the member's use of a key card, which the member inserted in the door. Once inside, Brown saw a dozen people drinking and socializing. He also saw a woman playing one of the video gambling machines, which later was seized. When the member who accompanied Brown introduced him to the bartender, Brown identified himself as "James." After obtaining a soft drink, he then played the "Draw Poker" and "Lucky Eight" machines by inserting a dollar bill for each game. He left at 7:25 p.m.

Deputy Swisshelm subsequently obtained a search warrant based on the information Brown gathered while he was at the club. On November 1, 1991, Deputy Swisshelm executed the search warrant, arrested several persons, and seized the alleged video gambling equipment. The defendants were: Lawrence Baker, Mary Ruth Keller, Paul Kyde, William Ernst, Joseph Kiechler, and Luther Ray Perry. They were charged with gambling violations under R.C. 2915.02(A)(2) and 2915.03.

In *State v. Posey* (1988), 40 Ohio St.3d 420, 534 N.E.2d 61, the Ohio Supreme Court examined a factually similar warrantless search of a private club where illegal gambling was taking place. The court concluded that the members of a fraternal organization voluntarily consented to entry by a deputy sheriff because the officer did not misrepresent his identity before entering. The court also concluded that he was invited to observe or engage in gambling activities. On the basis of those conclusions, the court specifically distinguished *Posey* from its earlier decision in *State v. Pi Kappa Alpha Fraternity* (1986), 23 Ohio St.3d 141, 295, 491 N.E.2d 1129. In *Pi Kappa Alpha*, liquor agents deceptively gained entry. The invitation by the fraternity house manager was extended to the officers for the purpose of recruiting potential members and was unrelated to the illegal sale of beer within the fraternity house.

The trial judge in this case expressly adopted the "consent" or "invitation" exception to the warrantless search prohibition in *Posey,* ruling:

"The issue of the entrance, the original entrance, turns on whether the person with the officer was a member, a valid member at the time. I believe if the person was a member, then the entrance—the entry, which was the basis for the search warrant, is valid."

Instead of maintaining that the court erred as a matter of law in granting the motion to suppress, the state challenges the court's application of *Posey* to the facts of this case. Specifically, the state maintains that the court wrongfully concluded that it had not met its burden in proving that Brown's original entry was with consent.

To establish the consent exception to both probable cause and the warrant requirements, the state has the burden of establishing by "clear and positive" evidence that consent was freely and voluntarily given. *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–1792, 20 L.Ed.2d 797, 802–803; *State v. Danby* (1983), 11 Ohio App.3d 38, 41, 11 OBR 71, 73–74, 463 N.E.2d 47, 50. Whether the consent is voluntary or coercive is a question of fact to be determined from the totality of the circumstances. *Posey, supra,* 40 Ohio St.3d at 427, 534 N.E.2d at 67. The court of appeals will not disturb the trial court's finding on a motion to suppress unless the court lost its way. *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.

In the case *sub judice,* the only evidence of consent was offered by the state. That evidence was testimony by Deputy Brown, who said that he gained entry to the hall by invitation of a member. He testified that he did not

deceptively gain entry by pretense because he did not encounter any person at the door, nor were his credentials checked. The defendants argue that the voluntary-consent exception required Deputy Brown to identify himself and to explain the purpose of his investigation. A similar argument was rejected under virtually identical circumstances in *Posey, supra,* 40 Ohio St.3d at 427, 534 N.E.2d at 67, in which the Ohio Supreme Court held, as a matter of law, that the "consent was freely and voluntarily given and there was no deception perpetrated." *Id.* Simply by posing as a participant in illegal activity, an undercover officer does not violate the Fourth Amendment or Section 14, Article I, Ohio Constitution. *Id.* at 428–429, 534 N.E.2d at 68.

The following remarks by the trial court also are conclusive that it sustained the motion to suppress not as a matter of law, but on the quantum of the state's proof that Deputy Brown entered the club with consent:

"It seems to me that since the state has the burden, the only way that it can be proved is for the name of the person to be disclosed to the defense so they can see whether the person was in fact a member. Obviously, I am sure there are many reasons not to do that, and it is my understanding that rather than do that the state would prefer to perfect an appeal at this time, which is reasonable."

The defendants filed a pretrial motion seeking disclosure from the state of the anonymous member's identity. During the hearing on the motion to suppress, defense counsel questioned Deputy Brown as to the identity of the member. The trial court sustained the state's objection to this questioning and never did order the prosecutor to disclose the identity of the member or conduct a hearing on defense counsel's motion to compel disclosure. The trial judge's announcement of his decision on the motion to suppress confirms the omission: "[W]e did reserve the issue of whether the informant/alleged member's name would have to be disclosed to this date."

Whether the identity of the informant must be disclosed requires a balancing of the defendants' constitutional right to cross-examine witnesses against the state's right to preserve anonymity of informants. *State v. Phillips* (1971), 27 Ohio St.2d 294, 297–298, 56 O.O.2d 174, 175–177, 272 N.E.2d 347, 349–350. The policy for providing anonymity is to give better protection to the public by encouraging citizens to report to law enforcement officials their knowledge of the commission of crimes. See *State v. Williams* (1983), 4 Ohio St.3d 74, 76, 4 OBR 196, 197–198, 446 N.E.2d 779, 781.

Disclosure of an informant's identity rests upon a case-by-case analysis. The decisive issue is whether the anonymous informant virtually becomes an essential witness upon whom the state depends to prove an element of the crime. As the court held in *Williams,* when the informant's participation was witnessed

in its entirety by a police officer, who is available to testify, the informant's testimony is not critical. *Id.* at 76, 4 OBR at 197–198, 446 N.E.2d at 781.[1]

After the trial judge found that the informant's testimony was so essential to the issue of consent, it had two choices: (1) to discount Deputy Brown's testimony as unbelievable and grant the motion to suppress rendering the issue virtually unreviewable because weight and credibility are reserved to the judgment of the trial judge in suppression hearings, *DePew, supra,* 38 Ohio St.3d at 277, 528 N.E.2d at 547; or (2) to conduct a hearing to determine if the state should be required to disclose the identity of the club member who Deputy Brown said invited him to enter. The trial court did neither. Consequently the trial judge deprived the state of any hearing or appellate review to challenge its decision that the identity of the purported informant was essential, and then granted the motion to suppress because the state failed to meet its burden on the issue of consent.

After the defendant establishes a warrantless search or seizure and adequate grounds for a Fourth Amendment challenge, the prosecution bears the burden of persuasion including the burden of going forward with the evidence. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus. It must show by a preponderance of the evidence that, under the totality of the circumstances, the warrantless search comes within one of the defined exceptions to the warrant clause of the Fourth Amendment. See *Athens v. Wolf* (1974), 38 Ohio St.2d 237, 241, 67 O.O.2d 317, 318–319, 313 N.E.2d 405, 408.

The only evidence in the record relative to consent was Deputy Brown's testimony that he entered by the invitation of a member. Because the trial court did not reject his testimony as inherently incredible, there was no contradictory evidence for it to weigh. Standing alone, Deputy Brown's testimony was sufficient to satisfy the state's burden of proof for a search by consent. *Posey, supra,* 40 Ohio St.3d at 428, 534 N.E.2d at 68; *DePew, supra,* 38 Ohio St.3d at 277, 528 N.E.2d at 547; *Fanning, supra,* 1 Ohio St.3d at 20, 1 OBR at 57–58, 437 N.E.2d at 584; *Martin, supra,* 20 Ohio App.3d at 175, 20 OBR at 218–219, 485 N.E.2d at 720. The state's assignment of error is sustained.

---

1. When a defendant attempts to subpoena a person who he thinks is the informant and the state moves to quash the subpoena, the trial court must hold an *in camera* interrogation of the potential witness. *State v. Brown* (1992), 64 Ohio St.3d 649, 597 N.E.2d 510. At that hearing, the court must determine whether that person's testimony would aid the accused. *Id.* at 653, 597 N.E.2d at 513. If the testimony would aid the accused, the court may not quash the subpoena. *Id.* This case, however, does not fit into the fact pattern of *Brown*.

The defendants-appellees seek to protect the judgment by an assignment of error pursuant to R.C. 2505.22. They challenge Deputy Swisshelm's entry two days later when he executed the search warrant. Accepting the sufficiency of his statement contained in the affidavit to the search warrant as constituting probable cause, the defendants argue that Deputy Swisshelm violated the knock-and-enter provisions of R.C. 2935.12. Deputy Swisshelm was the only witness to testify at the hearing concerning the execution of the search warrant. He said that, upon his arrival, he announced he had a search warrant, waited between five to twenty seconds, turned the doorknob, and when the door opened, walked into the hall without resistance. Despite the absence of exigent circumstances, even if there is force or resistance, an entry by law enforcement officers to serve a search warrant violates neither the federal nor state Constitution as long as there is probable cause to enter.[2] R.C. 2935.12 applies only if law enforcement officials break down a door to enter. According to our decision in *State v. Applebury* (1987), 34 Ohio App.3d 376, 378, 518 N.E.2d 977, 980, the statute involves violent, forcible entry.

But, even if we accept the defendants' argument that there was no judicial waiver of the knock-and-enter rule as provided in R.C. 2933.231, the Ohio Supreme Court has consistently adhered to its position that the exclusionary rule does not apply to violations of state law which do not rise to a violation of constitutional rights unless otherwise specifically provided by the legislature. *State v. Thompson* (1987), 33 Ohio St.3d 1, 8, 514 N.E.2d 407, 415; *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 234, 18 O.O.3d 435, 437–438, 416 N.E.2d 598, 600. See, also, *State v. Allen* (1981), 2 Ohio App.3d 441, 442, 2 OBR 536, 537–538, 442 N.E.2d 784, 786. Therefore, defendants' assignment of error is overruled.

The judgment of the trial court is reversed only as it relates to the state's assignment of error, and the cause is remanded for further proceedings. On remand, the court must grant a hearing on the motion to compel disclosure of the member's identity. If the court grants the motion to compel, it also must hold a hearing to determine if the consent was valid. If, however, the court overrules the motion to compel, the evidence presented by the state, on this record, is sufficient to establish consent as a matter of law.

*Judgment accordingly.*

SHANNON, P.J., DOAN and GORMAN, JJ., concur.

---

**2.** The defendants rely on *State v. DeFiore* (1979), 64 Ohio App.2d 115, 18 O.O.3d 90, 411 N.E.2d 837, arguing that a delay of ten to thirty seconds by officers before entering by means of a battering ram violated the Fourth Amendment. But the significance of *DeFiore* is the failure of the record to contain evidence of exigent circumstances to justify an unannounced forced entry which the trial court found unreasonable as a factual matter.