JOURNAL ENTRY AND OPINION
Defendant-appellant Sleiman Dakdouk (appellant) appeals from his conviction on four counts of trafficking in cocaine and four counts of possession of drugs. For the following reasons, the judgment of the trial court is affirmed in part and remanded for further proceedings regarding the forfeiture of seized property under R.C. 2933.43.
On October 6, 1999, the grand jury issued an indictment charging appellant with four counts of trafficking in cocaine (R.C. 2925.03) and four counts of possession of drugs (R.C. 2925.11). On the same day, the state filed a R.C. 2933.43 petition for forfeiture of seized contraband including $157.00 in food stamps and $6,980.00 in cash.
At his arraignment on October 21, 1999, appellant entered pleas of not guilty to the charges set forth in the indictment. On December 22, 1999, appellant filed a motion to suppress. The trial court denied appellant's suppression motion prior to trial.
On December 27, 1999, appellant filed a motion to dismiss the state's forfeiture petition. Appellant argued that the state's petition was untimely. Appellant also claimed that the petition failed to set forth a basis for forfeiture.
The jury trial of the underlying case commenced on January 10, 2000. Detective James Cudo of the Cleveland Police Department testified that the police had received several anonymous telephone calls complaining that Sam, the cashier at Ghazi's Supermarket, was selling drugs over the counter. During his investigation, Detective Cudo determined that Sam was appellant, Sleiman Dakdouk.
Detective Cudo contacted two confidential reliable informants to corroborate the fact that appellant was selling drugs from Ghazi's Supermarket. Detective Cudo decided to arrange a series of controlled drug transactions between the first informant and appellant.
According to Detective Cudo, the first informant assisted the police in numerous controlled drug transactions leading to the arrest of approximately forty people. The informant's identity is protected by the police for security reasons.
The first controlled drug transaction took place on March 12, 1999, at approximately 10:15 p.m. Detective Cudo and his partner, Detective Jeffrey Follmer, picked up the informant in an unmarked police vehicle. After searching the informant, the detectives gave him recorded buy money. The detectives drove the informant to Ghazi's Supermarket and he entered the store. Moments later, Detective Cudo followed appellant into the store. Detective Follmer took up a surveillance position outside of one of the store's windows.
After purchasing several items over the counter, the informant followed appellant to another cash register. Detective Cudo observed the informant and the appellant engaged in a hand-to-hand transaction. The informant then left the store, and handed to Detective Follmer several rocks of crack cocaine in a cellophane wrapper that he had just purchased from appellant. Tracy Kramer, a scientific examiner with the Cleveland Police Department, testified that the rocks testified positive as crack cocaine.
The detectives decided to conduct another controlled drug transaction on March 25, 1999, using the same procedure as the first controlled buy. Once again, Detective Cudo and Follmer witnessed appellant selling the informant drugs. Detective Cudo and Detective Kari Able used the informant for a third controlled drug transaction on March 26, 1999. This time, Detective Cudo observed the transaction from an outside surveillance location.
After observing a fourth controlled drug transaction between appellant and the informant, Detective Cudo decided he had enough suspicion to obtain a search warrant. Detective Cudo and his partner, Detective Follmer, executed the search warrant on May 13, 1999. Although no drugs were found during the search, the officers seized $1,680 and $5,300 in cash and $157 in food stamps. Detective Cudo and Detective James Kennelly matched the recovered money with the photocopies made of the buy money. (Tr. 227-228.) A twenty-dollar bill ($20.00) recovered from appellant's apartment matched the photocopies of the recorded buy money. (Tr. 228.) Detective Cudo's testimony was collaborated by the testimony of Detective Abel, Detective Kennelly, Detective Follmer, Mr. Kramer, and Sergeant Bartko.
After deliberation, the jury returned a verdict finding appellant guilty of four counts of trafficking in cocaine and four counts of possession of drugs. On January 23, 2000, appellant filed a motion for judgment of acquittal or for a new trial. The trial court denied this motion.
On February 28, 2000, the trial court conducted a forfeiture hearing. Although both counsel agree that there was an order granting in part the state's petition for forfeiture, the record on appeal does not contain such a journal entry.
In a journal entry filed on March 3, 2000, the trial court sentenced appellant to concurrent prison terms of eight months on each count. Therefrom, appellant filed a timely notice of appeal.
 I. THE COURT ERRED IN RULING THE SEARCH WARRANT AFFIDAVIT SET FORTH PROBABLE CAUSE TO SEARCH THE DEFENDANT'S HOME BASED ON ASSERTED DRUG SALES THAT WERE CONDUCTED AT A SEPARATE AND DISTINCT LOCATION.
In his first assignment of error, appellant argues that the trial court should have granted his motion to suppress. In particular, appellant challenges the evidence law enforcement officers seized from his upstairs apartment because the drug transactions occurred in the downstairs commercial portion of the building.
A criminal defendant bears the burden of proof in suppression proceedings involving evidence obtained pursuant to a warrant. State v. Childs (2000), 88 Ohio St.3d 558, 567, 728 N.E.2d 379. Crim.R. 41(B) provides:
 A warrant may be issued under this rule to search for and seize any: (1) evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed.
In his affidavit for a search warrant, Detective Cudo asserted in part:
 15. After making these controlled buys of cocaine. . . . Sleiman Dakdouk aka Sam was observed closing the store and then entering his premises above the store. Affiant observed the lights to the apartment come on shortly after this male went to the upstairs apartment.
 16. Further in the experience of the affiant, persons who traffic in illegal drugs frequently keep records of illegal transactions and evidence of communications used in the furtherance of drug trafficking activity, including but not limited to, pagers, cellular telephones, answering machines and answering machine tapes.
 17. Further, in the experience of the affiant, persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their person or within their possession, for use against law enforcement officials, as well as other citizens.
The circumstances set forth in Detective Cudo's affidavit resulted in the issuance of a search warrant to include the upstairs apartment, and provided sufficient basis to support a search of that area. Appellant's first assignment of error is overruled.
 II. THE COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE SEIZED IN THE WAKE OF UNLAWFUL EXECUTION OF THE SEARCH WARRANT IN THIS CASE.
In his second assignment of error, appellant complains that law enforcement ransacked appellant's apartment during the execution of the search warrant. Appellant argues that the trial court should have suppressed the evidence obtained by the police based upon the unreasonableness of the search.
 Appellant presented the testimony of his brother, Amin G. Dakdouk, to support the contention that the police trashed his apartment during the search. Appellant also presented photographs and a videotape of his apartment taken by his brother. Assuming arguendo that the photographs and videotape accurately depicted the condition of appellant's apartment immediately after the police conducted their search, they do not support the conclusion that law enforcement exceeded the scope of the warrant or conducted an unreasonable search. As Detective Cudo's affidavit for a search warrant noted, the drugs are small and easy to conceal. The photographs merely depict a thorough search, and not the devastation claimed by appellant.
Appellant failed to demonstrate on appeal that the search of appellant's apartment was unreasonable or exceeded the scope of the warrant. Therefore, appellant's second assignment of error is overruled.
 III. GIVEN RULES OF EVIDENCE 602 AND 801, THE COURT ERRED IN PERMITTING THE STATE TO OFFER CONSIDERABLE TESTIMONY PROVIDED BY NON-TESTIFYING DECLARANTS.
In his third assignment of error, appellant challenges the testimony of Detective Cudo regarding the anonymous tips he received about appellant selling illegal drugs out of Ghazi's Supermarket. Appellant insists that this testimony constituted inadmissible hearsay.
Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the state was not offering the anonymous tips to prove the truth of the matter asserted, viz., that appellant was selling drugs. Instead, testimony regarding the anonymous tips was presented merely to establish Detective Cudo's reasons for investigating appellant's activities.
Appellant also erroneously relies on Florida v. J.L. (2000),529 U.S. 266, 146 L.Ed.2d 254, 120 S.Ct. 1375. In Florida v. J.L., the United States Supreme Court held that an unsubstantiated anonymous tip is not sufficient to justify a warrantless search. In the instant case, Detective Cudo conducted an investigation based upon the anonymous tips. Thereafter, Detective Cudo obtained a search warrant based upon his personal observation of appellant conduct. Florida v. J.L. is inapplicable to this case. Appellant's third assignment of error is overruled.
 IV. THE COURT ERRED WHEN IT ADMITTED, OSTENSIBLY ON THE BASIS OF RULE 404(B), OHIO RULES OF EVIDENCE, WHAT WAS SAID TO BE OTHER BAD ACTS TESTIMONY.
In his fourth assignment of error, appellant argues that the trial court erred in allowing Sergeant Bartko to testify about appellant's prior drug arrest. Appellant bases this assignment of error on Evid.R. 404(B), which provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. (Emphasis added.)
The state did not offer Sergeant Bartko's testimony about appellant's prior drug arrest to prove appellant's character to show that he acted in conformity therewith. Instead, the state presented this testimony to rebut the inappropriate inferences previously raised by the defense during the cross-examination of Detective Cudo. As noted by the state, the defense opened the door to Sergeant Bartko's testimony during its cross-examination of Detective Cudo. It was appellant's attorney that initially questioned Detective Cudo about appellant's previous drug arrest and the fact that appellant was not convicted in that case. The defense clearly opened the door for the prosecution to further inquire about this prior arrest. See, generally, State v. McGlaughlin (Nov. 18, 1998), Summit App. No. 19019, unreported, citing State v. Wright (1990),48 Ohio St.3d 5, 8, 548 N.E.2d 923. As such, the fourth assignment of error is overruled.
 V. THE COURT ERRED WHEN IT ALLOWED THE STATE TO PRODUCE, AND WHEN IT ALLOWED THE JURY TO CONSIDER, AN EXTENSIVE QUANTITY OF HEARSAY EVIDENCE, THE ADMISSION OF WHICH VIOLATED THE DEFENDANT'S RIGHT OF CONFRONTATION.
In his fifth assignment of error, appellant challenges the admission of hearsay evidence. However, appellant failed to cite to the record or to offer any legal authority to support this proposition as required by App.R. 16(A)(7). See, also, App.R. 12(A)(2); State v. Watson (1998),126 Ohio App.3d 316, 321, 710 N.E.2d 340. Therefore, we summarily overrule this assignment of error.
 VI. THE COURT ERRED IN DISALLOWING THE DEFENSE TO CROSS-EXAMINE THE DEPUTY SHERIFF WHO TESTIFIED (OSTENSIBLY AS TO PRIOR BAD ACTS) ON THE BASIS OF WHAT WAS SAID TO BE AN IDENTIFIABLE INFORMANT'S WRITTEN STATEMENT, WHICH CONTRADICTED THE OFFICER'S TESTIMONY ON SEVERAL CRUCIAL POINTS.
Appellant's sixth assignment of error is nothing more than a gratuitous attack on the credibility of law enforcement officers. This court is unable to decipher what, if any, constructive legal challenge appellant submits for review in this assignment.
A review of the transcript reveals that the trial court allowed the defense counsel a fair and full opportunity to cross-examine Sergeant Bartko. (Tr. 372-378.) After redirect, defense counsel attempted to pursue his unsubstantiated theory of police corruption. To summarize the defense counsel's request for further cross-examination, in his own words:
 I think that I should be allowed to go into this to show that they do put false names to alleged informants, that alleged informants do sign statements at the end of their participation in these alleged events, in contrast to the testimony of Off. Cudo and the crude way that his unit functions. (Tr. 382.)
The trial court wisely disallowed defense counsel's weak diversionary tactic. The defense attorney now persists in the same conduct on appeal, calling into question the integrity of the whole justice system throughout his briefs, from the police and prosecutors to the courts. Such conduct is nonproductive to appellant's cause as well as to the pursuit of justice. Appellant's sixth assignment of error is without merit.
 VII. THE COURT ERRED WHEN IT REFUSED TO REQUIRE THE STATE TO DISCLOSE THE IDENTITY OF THE ALLEGED INFORMANTS.
In his seventh assignment of error, appellant claims that the trial court should have ordered the state to disclose the identity of the informants used against him. An abuse of discretion on. State v. Brown (1992), 64 Ohio St.3d 649, 597 N.E.2d 510.
As this court noted in State v. Richard (Dec. 7, 2000), Cuyahoga App. No. 76796, unreported:
 A criminal defendant is entitled to disclosure of a confidential informant's identity only where the informant's testimony is either: (1) vital to establishing an essential element of the offense charged; or (2) helpful or beneficial to the accused in preparing a defense. State v. Williams (1983), 4 Ohio St.3d 74, 446 N.E.2d 779, syllabus. If the informant's degree of participation is such that the informant is essentially a State's witness, the balance tilts in favor of disclosure. Id. at 76.
 However, where disclosure is not helpful to the defense, the prosecution need not reveal the informant's identity. Id. The defendant bears the burden of establishing the need for learning the informant's identity. Feltner, supra; State v. Parsons (1989), 64 Ohio App.3d 63, 69, 580 N.E.2d 800. (Emphasis added.)
The police used two confidential informants to confirm the anonymous complaints they received concerning appellant's drug activities. Thereafter, the police used one of the informants in four controlled drug transactions. The detectives searched the informant, gave him the buy money, observed the transactions, and obtained from the informant the crack cocaine he had purchased from appellant. In this situation, the disclosure of the informants' identities was not vital to establishing any essential element of the offenses charged.
In addition, appellant failed to meet his burden of establishing the need to disclose the informants' identities or that their identities would be helpful in preparing his defense. Therefore, the seventh assignment of error is overruled.
 VIII. THE COURT'S ORDER FORFEITING TO THE STATE FUNDS SEIZED FROM THE APPELLANT IS CONTRARY TO LAW AND OTHERWISE INDEFENSIBLE.
In his final assignment of error, appellant argues that the trial court erred in granting the prosecution's petition for forfeiture. Appellant asserts that the prosecution did not file its petition within thirty days of seizure and, therefore, he insists that the petition should have been time barred under R.C. of Ohio, S2943(C). R.C. 2943(C) does not exist, but this court surmises that appellant intended to reference R.C.2933.43(C).
R.C. S 2933.43(C) provides in relevant part:
* * *
 If the property seized was determined by the seizing law enforcement officer to be contraband because of its relationship to an underlying criminal offense or administrative violation, noforfeiture hearing shall be held under this section unless the person pleads guilty to or is convicted of the commission of, or an attempt or conspiracy to commit, the offense or a different offense arising out of the same facts and circumstances or unless the person admits or is adjudicated to have committed the administrative violation or a different violation arising out of the same facts and circumstances; a forfeiture hearing shall be held in a case of that nature no later than forty-five days after the conviction or the admission or adjudication of the violation, unless the time for the hearing is extended by the court for good cause shown. * * * Any property seized because of its relationship to an underlying criminal offense or administrative violation shall be returned to its owner if charges are not filed in relation to that underlying offense or violation within thirty days after the seizure, if charges of that nature are filed and subsequently are dismissed, or if charges of that nature are filed and the person charged does not plead guilty to and is not convicted of the offense or does not admit and is not found to have committed the violation.
 If the property seized was determined by the seizing law enforcement officer to be contraband other than because of a relationship to an underlying criminal offense or administrative violation, the forfeiture hearing under this section shall be held no later than forty-five days after the seizure, unless the time for the hearing is extended by the court for good cause shown.
(Emphasis added.)
R.C. 2933.43(C) does not provide a specific limitation period for the filing of a petition where the property seized was determined by the seizing law enforcement officer to be contraband because of its relationship to an underlying criminal offense. Instead, case law merely provides that [a] forfeiture petition is required to be filed within a reasonable time upon the seizure of property under R.C. 2933.43. State v. Baumholtz (1990), 50 Ohio St.3d 198, 553 N.E.2d 635, paragraph one of the syllabus. R.C. 2933.43(C) also requires that a forfeiture hearing be conducted no later than forty-five days after the conviction.
R.C. 2933.43(C) mandates that the forfeiture hearing be held within forty-five days of seizure only where the contraband is not related to the underlying criminal offense. Here, the seized contraband was clearly related to appellant's underlying criminal activity. The police compared the serial numbers of the confiscated money with photocopies of the police buy money used in the controlled drug transactions. The serial number of a twenty-dollar bill seized from appellant's apartment matched the buy money. Appellant intermingled this drug money with the other cash confiscated from his apartment.
In the instant case, the jury returned its guilty verdict on January 14, 2000. The trial court conducted the forfeiture hearing forty-five days later, on February 28, 2000. Although it appears that the state and the trial court satisfied the requirements of R.C. 2933.43(C), we are unable to review the trial court's determination because the record on appeal does not contain a forfeiture order. It is well established that a court speaks only through its journal entries. See State ex rel. Fogle v. Steiner (1995), 74 Ohio St.3d 158, 163, 656 N.E.2d 1288. Therefore, we must remand this case to the trial court with instruction to file a journal entry reflecting its forfeiture determination.
The judgment of the trial court is affirmed in part, and this case is remanded to the trial court for further proceedings regarding the application for forfeiture.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J. and ANN DYKE, J. CONCUR.
JOYCE J. GEORGE*, JUDGE
* (Joyce J. George, Retired Judge of the Ninth Appellate District, Sitting by Assignment).