{¶ 1} Defendant-appellant Eric Smith appeals from his convictions after a jury found him guilty on charges of possession of and trafficking in crack cocaine and possession of criminal tools.
 {¶ 2} Smith presents three assignments of error. He claims the trial court improperly denied his request to learn the identity of the confidential informant ("CI") the police used in the drug buy, and his convictions are not supported by either sufficient evidence or the manifest weight of the evidence.
 {¶ 3} After a review of the record, this court finds none of Smith's claims have merit. Consequently, his convictions are affirmed.
 {¶ 4} According to the testimony presented by the state, Smith's convictions result from a police "initiative" to capture "street level drug dealers." On October 11, 2007, Cleveland Narcotics Unit Detective Thomas Klamert "brought in an informant" whom he had used previously, and arranged for her to call a drug dealer with whom she was familiar. Klamert watched and listened as she made the call.
 {¶ 5} Klamert testified that when his CI's call was answered, she spoke to the individual and "was going to buy $50 of crack cocaine from Red at a McDonald's on East 55th Street." Klamert provided the "buy money" to the CI and waited with her in his "undercover" vehicle, a Ford Explorer, at that *Page 4 
location. After fifteen minutes, Klamert had his CI call again; as she asked her contact where he was, a man later identified as Smith drove into the parking lot in a gray Plymouth. Smith was speaking on his cellular telephone, and pulled his car next to Klamert's.
 {¶ 6} At that point, the CI exited Klamert's Explorer, went to the Plymouth's passenger window, leaned over the passenger, who was later identified as Victor Thedford, and "did a hand-to-hand transaction with the driver."
 {¶ 7} Klamert testified he watched the transaction, which was conducted "only ten feet away; and this is a nice day." The CI spoke with Smith, Smith reached into his mouth, pulled something out, and placed it in her palm. The CI handed Smith money with her other hand, Smith counted it, and the CI walked directly back to Klamert's Explorer.
 {¶ 8} As the CI sat down, Smith drove away. The CI then placed what was in the palm of her hand into Klamert's. Klamert described what the CI handed him: "It's all wet and it is three little knotted bags that have a rock of crack cocaine in each of them." Klamert immediately radioed his colleagues in the "take-down" unit to stop Smith's Plymouth.
 {¶ 9} Det. Scott Moran effected the stop; he testified his "take-down" unit had been waiting nearby, and he gained sight of Smith's Plymouth in *Page 5 
"approximately 30 seconds" after he received Klamert's transmission. Moran put on his lights and siren to pull Smith over.
 {¶ 10} Moran advised Smith of his rights as he made the arrest. Although Moran discovered during the pat-down search that Smith carried $135 on his person, he could not locate the "buy money." He asked Smith about it; Smith replied, "Man, I've been caught before and they never found the money and I never went to jail for it either."
 {¶ 11} Moran testified that he asked Smith if he had just met with someone at the McDonald's, and Smith acknowledged he "met a friend of his and that he gave her $10." Moran further testified that Smith subsequently offered to "give up the buy money * * * if we would let him go." During an inventory search of Smith's Plymouth, Klamert found a cellular telephone; both of the CI's calls had been made to that number.
 {¶ 12} Smith was indicted as a result of this incident on four counts, viz., one count of possession of crack cocaine, two counts of trafficking in crack cocaine, and one count of possession of criminal tools. Prior to trial, his defense counsel filed a motion for disclosure of the name of the CI. The trial court conducted a hearing on the motion, but denied it. Smith's case then proceeded to a jury trial. *Page 6 
 {¶ 13} Smith stipulated to the results of the drug analysis of the rocks, which tested positive as .44 grams of crack cocaine. The state presented Klamert and Moran as witnesses.
 {¶ 14} After the trial court overruled Smith's motion for acquittal, Smith testified in his own behalf. He asserted that he had provided his "friend" only with $10 in cash, so that she could buy food. He denied providing any drugs to the CI.
 {¶ 15} The jury subsequently found Smith guilty on all counts, and the trial court sentenced him to concurrent prison terms of eight months on each count. Smith appeals from his convictions with three assignments of error, as follows.
 {¶ 16} "I. The trial court erred when it denied Appellant's motion to reveal the identity of the confidential reliable informant which was material to the defense and thus denied Appellant of his right to a fair trial.
 {¶ 17} "II. The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.
 {¶ 18} "III. Appellant's convictions are against the manifest weight of the evidence." *Page 7 
 {¶ 19} Smith argues in his first assignment of error that the trial court improperly refused his motion to order the state to disclose the identity of the CI, because it was vital to his defense. This court disagrees.
 {¶ 20} A trial court's decision as to whether or not to disclose the identity of a confidential informant will not be reversed unless the trial court has abused its discretion. State v. Brown,64 Ohio St.3d 649, 1992-Ohio-19. A criminal defendant is entitled to disclosure only when the informant's testimony is either "vital" to establishing an essential element of the offense, or beneficial to the accused in preparing a defense. State v. Williams (1983), 4 Ohio St.3d 74.
 {¶ 21} In this case, the CI's testimony was unnecessary; the state proved the elements of the offenses solely through the detectives' testimony. In addition, Smith acknowledged at the hearing on his motion that the CI's identity was not essential to his defense. Rather, Smith knew the CI's first name, but sought her last name only in order to "interview her" and to find out if she "corroborate[d] everything that the police say."
 {¶ 22} On nearly identical facts, this court previously has determined the trial court did not abuse its discretion in denying the defendant's motion for disclosure of the CI's identity. State v. Robinson, Cuyahoga App. No. 87764, 2007-Ohio-265. See also, State v. Patterson, Cuyahoga App. No. 80409, 2002-Ohio-3100. *Page 8 
 {¶ 23} Smith's first assignment of error, accordingly, is overruled.
 {¶ 24} Smith argues in his second assignment of error that the state failed to support his convictions with sufficient evidence; therefore, the trial court should have granted his motion for acquittal of the charges. In his third assignment of error, he further argues that his convictions for drug possession, drug trafficking, and possession of criminal tools were unsupported by the manifest weight of the evidence. In light of the record, both arguments remain unpersuasive.
 {¶ 25} A defendant's motion for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 26} The test to be applied when reviewing a claim that a conviction is against the manifest weight of the evidence was set forth inState v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, citing State v.Martin, supra. The test is "much broader" than the test for sufficiency; i.e., this court reviews the entire record to determine whether in resolving any conflicts in the evidence, the jury "clearly *Page 9 
lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." Id., at 175.
 {¶ 27} Moreover, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to assess. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 28} In this case, Klamert testified that he personally observed the following: the CI made a call to someone from whom she indicated she could buy drugs; the CI was speaking on the telephone to that same person when Smith arrived at the designated location; the CI got out of Klamert's car and made a hand-to-hand transfer to Smith of money for drugs; the CI returned to the car with drugs, and Smith's cell phone was found in the Plymouth after he was arrested.
 {¶ 29} This testimony, when viewed in a light most favorable to the prosecution, constituted sufficient evidence to establish the elements of the crimes. State v. Patterson, supra. Consequently, the trial court committed no error in denying Smith's motion for acquittal.
 {¶ 30} Moran's testimony corroborated Klamert's. Smith's version of the events, on the other hand, not only remained uncorroborated, but, in view of his criminal record, seemed unlikely. The jury, therefore, acted well within its prerogative to give Smith's story little credit. Id. *Page 10 
 {¶ 31} For the foregoing reasons, Smith's second and third assignments of error also are overruled.
 {¶ 32} Smith's convictions and sentences are affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and MARY JANE TRAPP, J., CONCUR *Page 1