[Cite as *State v. Williams*, 2021-Ohio-2717.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


|                          |   |                          |
|--------------------------|---|--------------------------|
| STATE OF OHIO,           | : |                          |
| Appellee,                | : | CASE NO. CA2020-10-015   |
|                          | : | O P I N I O N            |
| - vs -                   |   | 8/9/2021                 |
|                          | : |                          |
| TIFFANY N. WILLIAMS,     | : |                          |
| Appellant.               | : |                          |


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 19-500-168


Andrew T. McCoy, Clinton County Prosecuting Attorney, and Danielle E. Sollars, Assistant Prosecuting Attorney, for appellee.

The Law Office of John D. Hill, LLC, and John D. Hill, Jr., for appellant.


**PIPER, P.J.**

{¶1} Appellant, Tiffany Williams, appeals her conviction in the Clinton County Court of Common Pleas for aggravated trafficking in drugs.

{¶2} An undercover detective with the Clinton County Sheriff's Office participated in a narcotics investigation involving Brian Reed, Williams' brother. The detective executed several controlled buys from Reed wherein Reed sold drugs to the undercover detective.

As part of the investigation, the detective also worked with a confidential informant ("CI") who was told by Reed that Williams had hydrocodone for sale at $10 per pill. Sometime later, the detective and the CI went to a nearby motel to purchase drugs from Williams.

{¶3} Upon arrival at the motel, Reed informed the detective and CI that the drugs had not yet arrived. Reed made a phone call and then advised that the drugs were on the way. The detective soon observed a white Durango pull into the parking lot. The detective recognized the Durango from a drug transaction that occurred the previous day. The Durango was registered to Williams, and she was driving the vehicle when it pulled into the motel parking lot. Williams' husband and young child were also in the vehicle at the time.

{¶4} The detective was sitting in the driver's seat of his vehicle, while the CI was sitting in the passenger seat. Reed, who acted as the intermediary between the detective and Williams, went to the Durango, spoke to Williams, left the Durango, and then came back to the detective's vehicle where he handed the drugs to the detective and retrieved the buy money. Reed then returned to the Durango with the money.

{¶5} Williams was later indicted for aggravated trafficking in drugs. Williams pled not guilty, and filed a motion to compel discovery of the CI. The trial court held a hearing on the motion, and denied Williams' request to compel discovery. Williams later waived her right to a jury trial, and the matter proceeded to a bench trial. The trial court found Williams guilty of aggravated trafficking and sentenced her to a suspended jail term and two years of community control. Williams now appeals her conviction, raising the following assignments of error.

{¶6} Assignment of Error No. 1:

{¶7} THE TRIAL COURT ERRED IN DENYING MS. WILLIAMS' MOTION TO DISCLOSE THE IDENTITY OF THE CONFIDENTIAL INFORMANT WHO ARRANGED THE ALLEGED DRUG TRANSACTION BETWEEN HERSELF AND THE INVESTIGATING

OFFICER.

{¶8} Williams argues in her first assignment of error that the trial court erred in denying her motion to compel discovery of the CI.

{¶9} The decision regarding disclosure of a CI requires balancing the interests of the defendant to confront his or her accusers versus the state's right to preserve the anonymity of informants. *State v. Williams*, 4 Ohio St.3d 74, 75 (1983). An accused is entitled to the disclosure of the identity of a confidential informant when "the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *Id.* at syllabus. The defendant bears the burden of establishing the need for disclosure. *State v. Pointer*, 12th Dist. Fayette No. CA2010-03-003, 2010-Ohio-5067, ¶ 8-9.

{¶10} "Generally, when the degree of participation of the informant is such that the informant virtually becomes a state's witness, the balance swings in favor of requiring disclosure of the informant's identity. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed." *State v. Williams*, 73 Ohio St.3d 153, 172 (1995). In order to meet this burden, "[s]omething more than speculation about the possible usefulness of an informant's testimony is required." *Pointer* at ¶ 9.

{¶11} A trial court's decision regarding the disclosure of a confidential informant's identity is reviewed on appeal using an abuse of discretion standard. *State v. Stevenson*, 12th Dist. Warren No. CA2003-08-085, 2004-Ohio-4783, ¶ 8. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Atkinson*, 12th Dist. Warren No. CA2009-10-129, 2010-Ohio-2825, ¶ 7. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

{¶12}  After reviewing the record, we find that Williams has failed to demonstrate that revealing the identity of the CI would have been beneficial to her defense.  The court found, and we agree, that the CI's involvement in the case was limited to his or her presence at the time the drug transaction occurred.  The CI did not arrange the buy or become involved in the sale in any way.  Instead, the CI simply sat next to the detective while the buy occurred and cannot now aid Williams in her case.

{¶13}  The trial court heard testimony from the undercover detective who testified that the CI connected him with Brian Reed, Williams' brother.  The three were then involved in a drug purchase that was not the subject of the current charge against Williams.  Instead, the charges stem from the controlled buy that occurred the next day when the CI was present with the detective, but had no involvement in the controlled buy.  Thus, there is no indication in the record that the CI did anything to rise to the level of a state's witness in the case.

{¶14}  Instead, the information leading to the indictment and conviction of Williams came from the undercover detective.  While Williams argues that the CI was in a different vantage point as the passenger of the undercover detective's car, there was no testimony or evidence elicited to show that the CI viewed anything differently sitting in the passenger seat than the detective did sitting in the driver's seat.  While Williams asserts in her brief that the CI's identification was "both relevant and potentially helpful" to her defense because the CI may have seen something or heard something that the detective did not, Ohio law requires more than speculation about the possible usefulness of an informant's testimony.

{¶15}  Williams has failed to carry her burden that disclosure was necessary to aid in her defense, and the trial court did not abuse its discretion in denying Williams' motion to compel discovery of the CI.  As such, Williams' first assignment of error is overruled.

{¶16}  Assignment of Error No. 2:

- 4 -

{¶17} THE TRIAL COURT ERRED IN FINDING MS. WILLIAMS GUILTY OF AGGRAVATED TRAFFICKING IN DRUGS IN CONTRAVENTION OF R.C. 2925.03(A)(2) AS SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶18} Williams argues in her second assignment of error that her conviction was against the manifest weight of the evidence.

{¶19} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶20} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 14-15.

{¶21} Williams was convicted of aggravated trafficking in drugs pursuant to R.C. 2925.03(A)(1), which provides, "no person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog."

{¶22} After reviewing the record, we find that Williams' conviction was not against

the manifest weight of the evidence. The state presented evidence that Williams knowingly sold a controlled substance to the undercover detective. The testimony elicited at trial indicated that Reed informed the undercover detective that the drugs were not currently at the scene of the transaction when the detective first pulled into the motel parking lot. However, once Williams pulled into the parking lot, Reed walked over to her car, spoke to her, and was able to then produce the drugs for sale to the detective.

{¶23} It is undisputed that Williams was the driver, and that Reed approached the driver side window specifically before retuning with the drugs. Once Reed had the buy money, he returned to Williams' driver side position to complete the transaction. The testimony also demonstrated that Williams remained in her vehicle the entire time the transaction was occurring, while her husband, the only other adult in the vehicle, exited the vehicle on the passenger side, away from Reed and the detective's automobile.

{¶24} After reviewing the record, we do not find that the trial court lost its way or created a manifest miscarriage of justice in finding Williams guilty. As such, Williams' second assignment of error is overruled.

{¶25} Judgment affirmed.

S. POWELL and BYRNE, JJ., concur.