[Cite as *State v. Spradlin*, 2025-Ohio-135.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-02-016 |
| | : | O P I N I O N |
| - vs - | | 1/21/2025 |
| | : | |
| RYAN K. SPRADLIN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case Nos. 23 CRB 3988 A and 23 CRB 3988 C


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Craig Newburger, for appellant.



**HENDRICKSON, J.**

{¶ 1} Appellant, Ryan Spradlin, appeals his convictions in the Clermont County Municipal Court for domestic violence and aggravated menacing. For the reasons stated below, this court affirms his convictions.

{¶ 2} In December 2023 and January 2024, appellant was charged by separate complaints with one count of domestic violence, one count of assault, and one count of

aggravated menacing. The matter proceeded to a jury trial, during which a 911 dispatcher, Deputy Boggs with the Clermont County Sherrif's Office, the victim, and the victim's brother testified on behalf of the state.

**{¶ 3}** The testimony at trial revealed that at approximately 12:00 p.m. on December 9, 2023, dispatch received a 911 call from an 11-year-old boy, "Josh," claiming that he and his 10-year-old brother, "Zach," were being chased by their father, appellant.[1] During the call, which was played during trial and admitted into evidence, Josh was emotional and crying while he described appellant chasing him and his brother near their grandmother's house. Josh indicated he saw appellant grab Zach by the neck and punch Zach in the face. Police were dispatched to the scene.

**{¶ 4}** Upon responding, Deputy Boggs located Josh, who was at a nearby church by himself. Josh described the situation to the deputy, who testified that Josh's statement was consistent with the information he disclosed on the 911 call. After securing Josh in his cruiser, Deputy Boggs made contact with appellant near a white van parked in the driveway of appellant's mother's, i.e., the children's grandmother's home. Based upon the contents of the dispatch call and Josh's statement, the deputy immediately detained appellant while several members of his family, including grandmother, attempted to intervene. At that point, the deputy observed Zach exiting the white van while holding a bloody rag to his nose. Appellant claimed Zach injured his nose by throwing himself on the ground.

**{¶ 5}** Deputy Boggs separated Zach from appellant and his family members prior to taking Zach's statement. During that process, Deputy Boggs heard grandmother instruct Zach not to speak with the officer. The deputy described Zach as upset, crying,

---

1. "Josh" and "Zach" are pseudonyms adopted in this opinion for purposes of privacy and readability. *State v. Leach*, 2024-Ohio-3145, ¶ 2, fn. 1 (12th Dist.).

and obviously shaken up from the incident with his father. At that time, Zach informed the deputy that appellant had slapped him in the nose and that his head hit the ground. Photographs of Zach's injuries, including fingerprint markings on his neck and dried blood on his face, were displayed at trial and admitted into evidence. A recording from Deputy Boggs's body camera, which was played for the jury during his testimony, was also admitted into evidence.

{¶ 6} After Deputy Boggs's testimony, Josh and Zach also testified on behalf of the state. During Josh's testimony, Josh could not recall what he told the 911 operator on December 9, 2023. Josh testified that, although it "looked like" his dad was hitting his brother that day, he now did not "think it was that." Zach similarly testified that he could not recall what he told the police that day and explained that his uncles had instructed him to say he could not remember anything.

{¶ 7} After deliberation, the jury found appellant guilty as charged. At sentencing, the charges of domestic violence and assault were merged as allied offenses, and the state elected to proceed with sentencing on the domestic violence offense. The trial court imposed consecutive jail terms of 180 days in jail for the domestic violence offense and 180 days in jail for the aggravated menacing offense.

{¶ 8} Appellant now appeals, raising the following assignment of error for our review:

{¶ 9} THE COURT ABUSED ITS DISCRETION BY ADMITTING INADMISSIBLE HEARSAY TESTIMONY.

{¶ 10} On appeal, appellant argues the trial court erred by admitting into evidence certain "inadmissible" hearsay testimony at trial. After our review, we find no merit to appellant's claim.

{¶ 11} "The admission or exclusion of evidence is a matter committed to the sound

discretion of the trial court." *State v. Singh*, 2022-Ohio-3385, ¶ 31 (12th Dist.). "We review a trial court's decision to admit or exclude evidence for an abuse of [that] discretion." *State v. Napier*, 2017-Ohio-246, ¶ 21 (12th Dist.). An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Grindstaff*, 2014-Ohio-2581, ¶ 21 (12th Dist.). "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." *State v. Williams*, 2021-Ohio-2717, ¶ 11 (12th Dist.). "Therefore, absent an abuse of discretion that has resulted in material prejudice, this court will not reverse a trial court's evidentiary decisions regarding the admission or exclusion of evidence at trial." *State v. Edwards*, 2023-Ohio-2632, ¶ 34 (12th Dist.).

{¶ 12} Appellant concedes that he did not object to all the testimony he now contends was erroneously admitted. Therefore, on appeal, he has waived all but plain error for the admission of those statements. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error does not exist unless, but for the error, the outcome of the trial would have been different. *State v. Blacker*, 2009-Ohio-5519, ¶ 39 (12th Dist.).

{¶ 13} We note at the outset that appellant does not specifically identify the alleged hearsay statements at issue, and instead merely directs us to several pages of the trial transcript and generally alleges that the court repeatedly admitted inadmissible hearsay testimony throughout Deputy Boggs's testimony. As we have stated before, it is not this court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *See State v. Clayton*, 2017-Ohio-8538, ¶ 35 (12th Dist.). However, even when considering the pages of testimony cited by appellant, we are not persuaded that any of the statements included therein are hearsay.

{¶ 14} The first portion of the transcript cited by appellant contains Deputy Boggs's testimony that he broke off his conversation with appellant because he "could hear a female, adult female voice telling [Zach] not to speak with me." Despite appellant's characterization to the contrary, this instruction, allegedly said by grandmother, is not hearsay.

{¶ 15} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" is defined for hearsay purposes, as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). An "assertion" for hearsay purposes simply means to say that something is so, e.g., that an event happened or that a condition existed. *State v. Richardson*, 2015-Ohio-824, ¶ 47 (12th Dist.). A directive, like an instruction not to speak with law enforcement, is not an assertion because it is incapable of being proved either true or false. *See State v. Spradlin*, 2017-Ohio-630, ¶ 29-30 (12th Dist.). Consequently, a directive cannot be offered to prove the truth of the matter asserted and is not hearsay. *Id.* Accordingly, the court did not err in admitting this testimony.

{¶ 16} Appellant next argues that the body camera recording contained inadmissible hearsay statements, and the trial court erred in overruling his objection to the same. We disagree. As discussed above, Deputy Boggs's body camera footage was played during trial and admitted into evidence. During the portion of the body camera recording identified by appellant in his brief, Zach can be heard stating to Deputy Boggs that his grandmother told him not to talk to the police.

{¶ 17} As an initial matter, we have already determined that because directives are not statements for the purposes of hearsay, grandmother's command to Zach not to speak to the deputy is not hearsay. *Spradlin* at ¶ 30. We likewise conclude that Zach's

statement conveying grandmother's directive to Deputy Boggs is not hearsay. "Out-of-court statements may be admissible as non-hearsay if they are used to explain a witness's actions." *State v. Scott*, 2013-Ohio-2866, ¶ 20 (12th Dist.). "'For example, where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay.'" *State v. Penwell*, 2011-Ohio-2100, ¶ 13 (12th Dist.), quoting *State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist. 1987). Here, the state did not offer Zach's statement to Deputy Boggs for the truth of the matter asserted. Instead, the record reflects that Zach's statement was used to provide context for Deputy Boggs's actions during the investigation, i.e., to explain his basis for separating Zach from his adult family members, including grandmother, prior to taking his statement. As such, the trial court did not abuse its discretion in admitting this evidence over appellant's objection.

{¶ 18} Lastly, appellant claims the trial court allowed impermissible hearsay evidence when Deputy Boggs testified that he had received statements from Josh, Zach, and various adults on the scene, and that of those, the children's story was most consistent with the injuries and what was dispatched to the deputy. After reviewing the portion of the transcript identified by appellant, we see no testimony conveying a hearsay statement. In that testimony, Deputy Boggs did not reference any specific out-of-court statement made by any adult, Zach, or Josh, nor did Deputy Boggs attempt to use those statements to prove the truth of the matter asserted. Rather, his testimony reflects that he received statements throughout the course of his investigation and the steps he took as a result of those statements. Such testimony is not hearsay. *State v. Piercefield*, 2023-Ohio-1781, ¶ 20-21 (12th Dist.); *see also* Evid.R. 801(A).

{¶ 19} In accordance with the above, we find no merit to any of the arguments raised herein by appellant. The trial court did not abuse its discretion or otherwise err in admitting the testimony appellant now claims was hearsay. Appellant's assignment of

error is overruled.

**{¶ 20}** Judgment affirmed.


BYRNE, P.J., and M. POWELL, J., concur.